UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAYVION ROSS,

           Plaintiff,

    v.

N. PALACIOS, et al.,

           Defendants.

Case No. 23-cv-00640-JST

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; SETTING BRIEFING SCHEDULE**

Re: ECF No. 27

Plaintiff, an inmate at Calipatria State Prison, has filed a *pro se* action pursuant to 42 U.S.C. § 1983, alleging that SVSP correctional officers Tanori, Palacios, Juarez, Dominguez, Guijarro, Corona, Avina, and Hernandez used excessive force on him on April 24, 2021, in violation of the Eighth Amendment.  Now pending before the Court is Defendants' motion for summary judgment on Plaintiff's claims for injunctive relief and against defendant Avina.  ECF Nos. 27-32.  Plaintiff has filed an opposition, ECF No. 35, and Defendants have filed a reply, ECF No. 44.  For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment.

## DISCUSSION

### I.    Complaint

The complaint makes the following factual allegations.  On April 24, 2021, officer Xiong refused to allow Plaintiff to take his approved phone call. When Plaintiff asked to speak the facility sergeant, officer Xiong replied, "Hell no," and summoned defendant Palacios. When Plaintiff told defendant Palacios that he wished to speak to the facility sergeant, defendant Palacios said, "Fuck you" and activated his emergency alarm even though Plaintiff had done nothing to justify an alarm.  In response to the alarm, defendants Tanori, Corona, Alvarez,

1   Dominguez, Guijarro, and Avina[1] arrived at Plaintiff's pod and assaulted him.  Defendant Avina

2   did not stop the assault.  The assault left Plaintiff with a knee injury that required surgery.  Due to

3   the assault, Plaintiff is unable to stand, suffers from chronic pain, and was prescribed a wheelchair.

4   That same day, Plaintiff complained to medical and custody staff about the injury and related pain

5   caused by Defendants' use of excessive force.  On April 27, 2021, Plaintiff was issued a

6   disciplinary violation for the April 24, 2021 incident that falsely accused him of resisting staff.

7   The RVR was authored by defendant Palacios with supporting statements by Guijarro and Xiong.

8   This false RVR was issued in retaliation for Plaintiff asking to speak with a facility sergeant and

9   for Plaintiff complaining to medical and custody staff about the April 24, 2021 incident.  *See*

10   *generally* ECF No. 1.

11       The complaint alleged three legal causes of action: (1) an Eighth Amendment excessive

12   force claim against defendants Tanori, Palacios, Juarez, Dominguez, Guijarro, Corona, Avina, and

13   Hernandez with respect to the April 24, 2021 assault; and (2) a First Amendment retaliation claim

14   and Fourteenth Amendment due process claim against Tanori, Palacios, Juarez, Alvarez,

15   Dominguez, Guijarro, Corona, and Avina for the retaliatory issuance of a false RVR.  *See*

16   *generally* ECF No. 1.  The complaint requested the following relief: $500,000 in compensatory

17   damages, $1 million in punitive damages, and $250,000 in nominal damages from each defendant;

18   an order requiring expungement of the April 24, 2021 rules violation report; an injunction

19   prohibiting Defendants from further use of unreasonable, excessive force, and from issuing false

20   writeups or disciplinary violation reports to inmates who requested to speak with sergeants or

21   other CDCR employees; and an order requiring the CDCR to diversify its staff and assign "equal

22   African American CDCR employees to work as officers at SVSP Facility C."  ECF No. 1 at 4, 12.

23       The Court found that the complaint stated a cognizable Eighth Amendment excessive force

24   claim, but dismissed with prejudice the the First Amendment retaliation claim and Fourteenth

25   Amendment due process claim for failure to state a claim.  *See generally* ECF No. 8.

26

27   ―――――――――――――――
     [1] In the complaint, defendant Avina was named as Tange.  Since then, defendant Avina has

28   changed her surname to Avina.  ECF No. 28 at 2.  The service order ordered service on defendant
     Tange, but Defendants' pleadings refer to her as defendant Avina.  The Court also refers to her as
     defendant Avina, as Avina appears to be her legal surname at this time.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II. Factual Background

The following facts are undisputed unless otherwise indicated.

### A. Plaintiff's Housing Status

At the time of the relevant events, Plaintiff was housed at Salinas Valley State Prison. On June 29, 2024, Plaintiff was transferred to Correctional Training Facility ("CTF") and housed in CTF's Restricted Housing Unit ("RHU"). ECF No. 27-3 at 2. Plaintiff was scheduled for a August 15, 2024 institutional classification committee hearing to determine whether he should be retained in RHU. ECF No. 27-3 at 2. Since April 21, 2025, Plaintiff has been housed at Calipatria State Prison, and remains housed there as of this date. ECF No. 49.

### B. Plaintiff's Allegations Regarding Defendant Avina

Plaintiff alleges that, on April 21, 2021, SVSP officers Palacios, Tanori, Hernandez, Guijarro, Dominguez, Corona, and Juarez assaulted him without justification and used excessive force, and that defendant Avina stood by the door and did not intervene to stop the assault. *See generally* ECF No. 1; ECF No. 27-2 at 9-10. Plaintiff describes defendant Avina's involvement as follows: "[Defendant Avina] was watching as all of these things take place and didn't do anything to stop it. And because she is the senior officer, she is responsible, as well, for my injuries . . . [defendant Avina] was by the damn door." ECF No. 27-2 at 9-10.

### C. CDCR Administrative Remedy Process and Plaintiff's Relevant Grievances

During the relevant time period, the California Department of Corrections and Rehabilitation ("CDCR") provided inmates the following administrative remedy process. An inmate had the ability to dispute "a policy, decision, action, condition, or omission by the [California Department of Corrections and Rehabilitation] Department or departmental staff that causes some measurable harm to their health, safety, or welfare" by submitting a written grievance. 15 Cal. Code Regs. § 3481(a) (eff. Mar. 10, 2021).[2] An inmate seeking to grieve non-healthcare-related issues must, within 30 days of discovering the claim, submit his claim for a first

---

[2] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020, 2022, and 2024. The references in this Order to sections of Title 15 of the California Code of Regulations are to the sections in effect during the relevant events.

level review by filling out and submitting a CDCR Form 602-1 to the Institutional Office of Grievances ("OOG") at his prison.  15 Cal. Code Regs. § 3482 (eff. Mar. 10, 2021); ECF No. 27-1 at 2.  In the Form 602-1, the inmate is required to "describe all information known and available to the [inmate] regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the [inmate's] knowledge."  15 Cal. Code Regs. § 3482.  In response, the inmate shall receive a written decision from the OOG no later than 60 calendar days after receipt of the grievance, clearly explaining the reasoning for the Reviewing Authority's decision as to each claim.  *Id.* at §§ 3481(a); 3483(i) (eff. Mar. 10, 2021).

If the inmate is dissatisfied with the OOG decision, he may appeal the decision by filing a written appeal with the Office of Appeals ("OOA").  ECF No. 27-1 at 2.  A final decision by the OOA is required to exhaust an inmate grievance.  ECF No. 27-1 at 2.

When the OOG receives a grievance, the OOG assigns the grievance a tracking number, also referred to as a log number, and enters the grievance into a computer tracking system which tracks all inmate grievances received by that OOG.  ECF No. 27-1 at 2.  The system tracks the inmate's CDCR number; the date and time the grievance was received; the grievance's log number; the claim number(s); the claim category; the claim sub-category, if applicable; the latest action taken, including whether OOA has issued a final deposition of the grievance; and the reason for any screened out or rejected grievance.  ECF No. 27-1 at 2.  The OOA receives, reviews, and maintains all non-medical grievances at the final level of review.  ECF No. 27-1 at 2.

According to the tracking systems maintained by the SVSP OOG and the OOA, Plaintiff submitted one grievance regarding the April 21, 2021 event, Grievance No. 113544.  Grievance No. 113544, submitted on April 28, 2021, alleges that defendants Alvarez, Corona, Dominugez, Gujiarro, Palacios, and Tanori used excessive force on Plaintiff on April 21, 2021:

> This is a P.C. 148.6 misconduct complaint on CDC-SVSP Employees Tonari (sic), Corona, N. Palacios, Alvarez, Dominguez, Correa, & others (Fac. C. Non-Black Majority) for assault & battery with excessive, unreasonable force upon my body on Sat. April 24, 2021, in Fac. C / Unit 1 Section A- Dayroom when I tried to get the fac. Sgt.s' attention, C/o Xiong refused to let sgt know so I sat at the table not showing no acts of aggression. N. Palaios put on a pair of black

> gloves and began advancing toward me, while the other guard stood watching. I told Palacios I just wanted to speak with the sgt. He said "fuck you" and pushed his alarm button. Guards Tanori, Correa ran into section with spray cans out and I got up & started backing up in a non-hostile non-aggressive manner. I kept saying all I want is to speak with the Sgt. & they (Tanori & N. Palacios) grabbed me, Tanori kicked my right leg/knee backwards (I heard a loud crack) & I fell defenseless to the ground. Then guards Palacios, Tanori, Alavrez, Guijiarro, Dominguez, Corona & others all started beating me with their fists, putting their knees on my neck, almost cutting off my air circulation, I felt like I was going to black out. Corona said if you're talking you can breath. & pressed harder. Had to use wheelchair.

ECF No. 27-1 at 6-9. On June 23, 2021, this grievance was denied at the first level of review, with a finding that staff "did not violate California Department of Corrections and Rehabilitation policy with respect to one or more of the issues appealed." ECF No. 27-1 at 20-21. Plaintiff appealed the denial:

> As the evidence presented to CDCR Sgt. Ruiz at the investigation demonstrated CDCR employees C. Tanori, J. Corona, N. Palacios, C. Alvarez, G. Dominguez, L. Correra & others here at SVSP Fac. C did in fact attack, assault & injured me on 4-24-2021 for simply exercising the right to request to speak with the facility sergeant which is established policy, practice & procedure because it was unreasonable & violated U.S., Cal. Laws & CDC rules, regulations & policies against excessive, unreasonable use of force. The beating left me in a wheelchair unable to walk. It occurred during the time of the society's outcry of injustice in George Floyd's death & several other assaults of black prisoners at SVSP Fac. C.

ECF No. 27-1 at 10-19. On September 8, 2021, the OOA granted Grievance No. 113544; found that the OOG response lacked sufficient reasoning to support its decision as required by 15 Cal. Code Regs. § 3481(a); directed the SVSP OOG to open a new grievance for the purpose of providing Plaintiff with a substantive responsive and summary of facts in support of its decision; and deemed Grievance No. 113544 exhausted. ECF No. 27-1 at 22.

Pursuant to the OOA's September 8, 2021 decision, the SVSP OOG opened Grievance Log No. 164357. On November 9, 2021, the SVSP OOG denied Grievance No. 164357, stating that witness interviews refuted Plaintiff's allegations. ECF No. 27-1 at 39-40. Plaintiff appealed the OOG decision. ECF No. 27-1 at 37-38. On February 2, 2022, the OOA granted Grievance No. 164357, finding that the SVSP OOG (1) inaccurately stated that there was no information that indicated that staff violated department policy and (2) did not adequately review the allegations. ECF No. 27-1 at 59-60. The OOA directed the SVSP OOG to open a new grievance, Log No.

United States District Court
Northern District of California

164357, for the purpose of addressing the identified deficiencies.  Specifically, the OOA directed the SVSP OOG to gather information to either substantiate or refute the claims that the incident was racially motivated and that staff used profane language; to investigate the alleged comments made by CO Corona coupled with the placement of a knee on Plaintiff's neck; to inquire into the events regarding the onset of the incident; to interview all witnesses; and to have the Institutional Executive Review Committee review the inappropriate force allegations pursuant to 15 Cal. Code Regs. § 3268(a)(18).  ECF No. 27-1 at 59-60.

Pursuant to the OOA's February 2, 2022 decision, the SVSP OOG opened Grievance Log No. 223314.  On February 23, 2022, the SVSP OOG issued a decision, identifying the claim as a staff misconduct claim, and explaining that this meant that the claim was "referred outside the grievance and appeal process to an appropriate authority within the [CDCR] for the purpose of gathering facts needed to prove or disapprove the allegation."  The OOG decision further explained that Plaintiff would receive a separate response at the end of the staff misconduct investigation process and that the decision constituted exhaustion of administrative remedies.  ECF No. 27-1 at 85.

None of these grievances – Grievance Log Nos. 113544, 164357, and 223314 – reference defendant Avina.

### III.     Summary Judgment Motion

Defendants have moved for summary judgment with respect to (1) defendant Avina, for failure to exhaust administrative remedies; and (2) Plaintiff's claims for injunctive relief, on the grounds that some claims became moot upon Plaintiff's transfer away from SVSP and that Defendants lack the authority to expunge an RVR from an inmate's file or hire additional correctional officers.  ECF Nos. 27-31.

Plaintiff filed a 36-page opposition.  ECF No. 35.  The opposition consists of one-page of argument, unsigned; and 35 pages of medical records that Plaintiff states he seeks to submit as evidence.  In the one-page argument, Plaintiff states that he did not know of defendant Avina's identity at the time he filed his grievance and that his grievance referenced defendant Avina when he referred to "the others."  ECF No. 35.  Plaintiff offered the following additional arguments

opposing the summary judgment motion in his request for extension of time, ECF No. 43:

> Just because I (Jayvion M. Ross / Plaintiff) am currently in RHU doesn't mean that my claims are mute (sic), or that I'm not entitled to the relief I am requesting because if the roles were in reverse and I was the one who battered, assaulted, and caused multiple injuries to the Defendants and they were suing me the fact that I'm in the RHU would not negate anything & in-fact they would be trying to prove I'm some kind of violent menace so because of that I believe that my case is still very much & should proceed.

ECF No. 43 at 4.

In their reply, Defendants argue that the Court should disregard Plaintiff's opposition because it is unsigned and therefore inadmissible as evidence; that the opposition's conclusory statement that Plaintiff was unaware of defendant Avina's identity fails to raise a genuine issue of material fact as to whether Plaintiff exhausted his claims against defendant Avina; and that because the opposition fails to address, much less oppose, the claims that defendant Avina did not use excessive force and that the injunctive relief claims are moot and lack jurisdiction, the Court should deem Plaintiff to have consented to these arguments. ECF No. 44.

### A.    Summary Judgment Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings

and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020). If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

## B.    Defendant Avina – Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has not exhausted his administrative remedies against defendant Avina because his grievance did not identify defendant Avina, her alleged use of force, or her alleged failure to intervene in Defendants' use of force. ECF No. 31. Plaintiff alleges that he did not identify defendant Avina by name in the grievance because, on the date he filed the grievance, he was unaware of her name; and that his reference to "the others" in his grievance was a reference to defendant Avina. ECF No. 35.

### 1.    Legal Standard

The Prison Litigation Reform Act ("PLRA") sets forth the requirement that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Section

1997e(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires the incarcerated person to use all steps of the administrative process and comply with "deadlines and other critical procedural rules." *Id.* at 90. If an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted. *Reyes v. Smith*, 810 F.3d 654, 656, 658 (9th Cir. 2016) (plaintiff's claim exhausted as to prison doctors named in federal action where grievance plainly put prison officials on notice of the nature of the wrong alleged in federal action – denial of pain medication by defendant doctors – and prison officials easily identified the named prison doctors' involvement in the issue); *Wilkerson v. Wheeler*, 772 F.3d 834, 840 (9th Cir. 2014) (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer who applied pressure to inmate's ankle deliberately to inflict pain). Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id.* at 218. Where a prison's grievance procedures do not specify the level of factual specificity required in the grievance, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

Failure to exhaust under the PLRA is an affirmative defense that the defendant must plead and prove. *Jones*, 549 U.S. at 216. The defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Once the defendant has carried that burden, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id.* The ultimate

1    burden of proof remains with the defendant.  *Id.*  If undisputed evidence viewed in the light most

2    favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment

3    under Fed. R. Civ. P. 56.  *Id.* at 1166.  But if material facts are disputed, summary judgment

4    should be denied, and the district judge rather than a jury should determine the facts in a

5    preliminary proceeding.  *Id.*

6             **2.      Analysis**

7             The Court finds that Plaintiff has not demonstrated a triable issue of fact as to whether he

8    exhausted administrative remedies against defendant Avina.  In his deposition, Plaintiff

9    acknowledges that defendant Avina was not directly involved in the use of force, and that the basis

10   for her liability stems from her failure to intervene in the assault.  ECF No. 27-2 at 9-10.

11   Grievance No. 113544's reference to "others" therefore does not refer to defendant Avina.

12   Grievance No. 113544 defines the "others" as the individuals who assaulted and beat Plaintiff on

13   April 24, 2021: "CDC-SVSP Employees Tonari, Corona, N. Palacios, Alvarez, Dominguez,

14   Correa, & others (Fac. C. Non-Black Majority) *for assault & battery with excessive, unreasonable*

15   *force upon my body on Sat. April 24, 2021*" and "guards Palacios, Tanori, Alavrez, Guijiarro,

16   Dominguez, Corona & others *all started beating me with their fists . . .*"  ECF No. 27-1 at 6-9

17   (emphasis added).  The reference to "& others" does not refer to bystanders or supervisors.  In

18   appealing the grievance and in the subsequent grievances opened pursuant to the OOA's direction,

19   Plaintiff does not state that he is seeking relief related to correctional officials who had not

20   participated in the assault.  Plaintiff's grievance therefore did not alert the prison that he sought to

21   hold liable correctional officials who were present during, but did not directly participate in, the

22   assault, such as defendant Avina.  The Court therefore GRANTS summary judgment in favor of

23   defendant Avina for failure to exhaust administrative remedies with respect to the excessive force

24   claim.  *Griffin*, 557 F.3d at 1120 (grievance exhausts claim if it alerts prison to nature of wrong for

25   which redress is sought).

26           **C.      Injunctive Relief**

27           Defendants argue that they are entitled to summary judgment on Plaintiff's requests for

28   injunctive relief for the following reasons.  First, Plaintiff's request for an injunction ordering

United States District Court
Northern District of California

1  Defendants to expunge the April 24, 2021 RVR and his request for an injunction requiring the

2  CDCR to diversify its staff and assign "equal African American CDCR employees to work as

3  officers at SVSP Facility C" are improper because the individual defendants do not have the

4  authority to expunge an RVR from Plaintiff's (or any inmate's) central file or to hire staff.

5  Second, Plaintiff's request for an injunction prohibiting Defendants from using unreasonable,

6  excessive force, and from submitting false writeups or disciplinary violation reports to inmates

7  who request to speak with sergeants or other CDCR employees is moot because Plaintiff is no

8  longer housed at SVSP and has no reasonable expectation of returning to SVSP on a permanent

9  basis because the classification committee could decide to send him elsewhere.  Finally,

10  Defendants argue that Plaintiff has failed to demonstrate that he is danger of imminent harm, as

11  required for injunctive relief.  ECF No. 31 at 4-5.  Plaintiff argues that his claims are not moot

12  because if he had assaulted correctional officials, correctional officials would be trying to prove

13  that he was some kind of violent menace.  ECF No. 43 at 4.

14        Plaintiff misunderstands Defendants' arguments.  Defendants do not argue that the Eighth

15  Amendment excessive force claim is moot, or that the request for monetary damages is moot.

16  Here, Defendants seek summary judgment solely with respect to the requests for injunctive relief.

17  As explained below, the Court finds that Defendants are entitled to summary judgment on the

18  injunctive relief claims.

19        The Court GRANTS summary judgment in favor of Defendants with respect to Plaintiff's

20  request for an injunction ordering Defendants to expunge his April 24, 2021 RVR and ordering the

21  CDCR to diversify its staff and assign African American CDCR employees to work as officers in

22  SVSP Facility C because Defendants cannot provide the relief requested.  A federal court's

23  equitable power "lies only over the merits of the case and controversy before it."  *Pac. Radiation*

24  *Onc. LLC v. Queen's Medical Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).  "A federal court may issue

25  an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the

26  claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. U.S.*

27  *I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).  It is undisputed that the named defendants cannot

28  provide Plaintiff with this particular set of injunctive relief as they do not have the authority to

expunge RVRs from an inmate's central file or to hire correctional staff. ECF No. 28 at 2; ECF No. 31 at 5. Defendants state, and Plaintiff has not refuted, that only correctional administrators can expunge RVRs; and that the individual defendants have no control over the hiring practices at the prison. It appears that the only persons who can grant the relief requested, such as the prison correctional administrators or the CDCR executive leadership, are nonparties over whom the Court has no jurisdiction. *See O'Brien v. Ogletree*, No. 1:20-CV-1553 BAM (PC), 2021 WL 963775, at *4–*5 (E.D. Cal. Mar. 15, 2021), *report and recommendation adopted*, No. 1:20-CV-01553 NONE-BAM (PC), 2021 WL 1839633 (E.D. Cal. May 7, 2021) (denying prisoner's request for removal of RVR because named defendants – individual correctional officers – did not have authority to expunge RVR from central file) (collecting cases).

In addition, the request for expungement of the RVR also fails to state a claim for two other reasons. First, Plaintiff lacks standing to seek expungement of his RVR because the expungement would not redress the injury caused by the excessive force, as is required for Article III standing. *See Carney v. Adams*, 592 U.S. 53, 58 (2020) (Article III standing present only when (1) plaintiff suffers concrete, particularized injury which is actual or imminent; (2) causal connection between injury and conduct complained of; and (3) injury will likely be redressed by favorable judicial decision). Second, expungement of Plaintiff's RVR is unrelated to the Eighth Amendment excessive force claim. The RVR is the subject of Plaintiff's First Amendment retaliation claim and his Fourteenth Amendment due process claim, both of which have been dismissed. A plaintiff is not entitled to an injunction based on claims not pled in the complaint. *Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). The RVR is not sufficiently related to the excessive force, such that the expungement of the RVR would offer redress for the excessive force. *Id.* (district court properly denied plaintiff's request for injunction to prevent HIPAA violation, where plaintiff had not asserted claim for HIPAA violation).

The Court GRANTS summary judgment in favor of Defendants with respect to Plaintiff's request that the Court order Defendants to cease issuing false disciplinary violations to inmates who want to speak with CDCR sergeants. This request for injunctive relief arises from the

dismissed claims for First Amendment retaliation and Fourteenth Amendment due process.  This request for injunctive relief is unrelated to the Eighth Amendment excessive force claim; would not redress the injury caused by the Eighth Amendment excessive force; and does not have a sufficient nexus with the excessive force claim.  *Carney*, 592 U.S. at 58; *Pacific Radiation Oncology, LLC*, 810 F.3d at 633.

The Court GRANTS summary judgment in favor of Defendants with respect to Plaintiff's request that the Court order Defendants to cease using unreasonable and excessive force on him.  Defendants argue that this request is moot because Plaintiff has been transferred from SVSP and has no reasonable expectation of returning, citing to *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *see also Dilley v. Gunn*, 64 F.3d 1365, 1372 (9th Cir. 1995).  The Court finds that, viewing the record in the light most favorable to Plaintiff, Defendants have failed to demonstrate the absence of a genuine issue of material fact as to whether Plaintiff will return to SVSP.  The record indicates that prison officials frequently move Plaintiff.  Plaintiff has been housed in three different prisons in the space of a year.  On June 29, 2024, Plaintiff was transferred from SVSP to CTF; and on April 21, 2025, Plaintiff was transferred from CTF to Calipatria State Prison.  Defendants have not proffered any evidence suggesting that Plaintiff will not be transferred again and will not be transferred back to SVSP.  In the cases cited by Defendants, the courts found the injunctive relief claim moot where the prison officials provided specific reasons as to why the prisoner-plaintiff was unlikely to be housed again in the facility where the alleged constitutional violations took place, such as the prisoner's classification factors combined with the prison's specific housing requirements, or the inmate being transferred to the custody of a different governmental entity.  *See Johnson*, 948 F.2d at 519 (request for injunctive relief moot where incident took place at Washington state correctional facility and prisoner-plaintiff had been transferred to federal facility in Arizona); *Dilley*, 64 F.3d at 1372 (prisoner-plaintiff had not demonstrated reasonable expectation of returning to facility where incident took place because he was reclassified as a Class III inmate after the incident, the facility only housed Class IV inmates, and prisoner-plaintiff would have to commit serious violation of prison rules to be reclassified as Class IV inmate).  Defendants have not provided reasons specific to Plaintiff that demonstrate no

triable issue as to whether he will be returned to SVSP.  However, although this request for injunctive relief is not moot, nothing in the record indicates that that Plaintiff is presently or imminently at risk of irreparable harm from Defendants, as is required to seek injunctive relief.  A plaintiff seeking a permanent injunction must demonstrate: (1) that he has suffered an irreparable injury, including a continuing and imminent threat of harm; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57, 162 (2010).  Because Plaintiff is no longer housed at SVSP, he is not currently at present or imminent risk of harm from Defendants, such that injunctive relief is needed.  In addition, Plaintiff has not argued that, much less provided evidence that, monetary damages are insufficient to compensate him for his injuries.  But because it is unclear as to whether Plaintiff is likely to be housed at SVSP again, the Court dismisses this claim for injunctive relief without prejudice.  Plaintiff may seek leave to amend the complaint to add back in this claim for injunctive relief should Plaintiff's circumstances change such that this injunctive relief is necessary to address a continuing or imminent threat of harm, or if Plaintiff finds facts in discovery showing that damages would be inadequate to compensate him for the alleged injury.

## CONCLUSION

For the reasons forth above, the Court ORDERS as follows.

1.      The Court GRANTS Defendants' motion for summary judgment.  ECF No. 27.  The Court DISMISSES defendant Avina from this action without prejudice to re-filing once administrative remedies are exhausted.  The Court DISMISSES with prejudice the following claims for injunctive relief:  a court order ordering Defendants to expunge the April 24, 2021 RVR; ordering Defendants to cease submitting false writeups or disciplinary violation reports to inmates who request to speak with sergeants or other CDCR employees; and requiring the CDCR to diversify its staff and assign "equal African American CDCR employees to work as officers at SVSP Facility C."  The Court DISMISSES without prejudice the following claim for injunctive

14

relief:  a court order requiring Defendants to cease using unreasonable and excessive force on Plaintiff.

2. The remaining claims in this action are as follows.  Defendants Tanori, Palacios, Juarez, Dominguez, Guijarro, Corona, and Hernandez used excessive force on Plaintiff on April 24, 2021, in violation of the Eighth Amendment.  Plaintiff seeks $500,000 in compensatory damages, $1 million in punitive damages, and $250,000 in nominal damages from each defendant.

3. The Court sets the following briefing schedule on the merits of this action.  By September 30, 2025, Defendants shall file their dispositive motion.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due.  A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion.  *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).

Plaintiff's opposition to Defendants' motion must be filed with the Court and served upon Defendants no later than 28 days from the date the motion is filed.  Defendants shall file a reply brief no later than 14 days after the date the opposition is docketed in the Court's electronic filing system.  The motion will be deemed submitted on the date the reply brief is due.

Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and

United States District Court
Northern District of California

15

documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A). (The *Rand* notice above does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment. *Woods*, 684 F.3d at 939).

This order terminates ECF No. 27.

**IT IS SO ORDERED.**

Dated:  September 29, 2025



_____
JON S. TIGAR
United States District Judge